J-S54034-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| WILLIAM RAY RANKINS, | : | |
| | : | |
| Appellant | : | No. 71 WDA 2016 |

Appeal from the Judgment of Sentence December 16, 2015
in the Court of Common Pleas of Forest County,
Criminal Division, No(s):  CP-27-CR-0000035-2015

BEFORE:  BENDER, P.J.E., OTT and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:              **FILED AUGUST 04, 2016**

William Ray Rankins ("Rankins") appeals from the judgment of sentence imposed after a jury convicted him of one count each of harassment, aggravated assault, and simple assault, and two counts of disorderly conduct.[1]  Alyce Busch, Esquire, ("Busch"), Rankins's counsel, has filed a Petition to Withdraw as counsel and an accompanying brief pursuant to **Anders v. California**, 386 U.S. 738, 744 (1967).  We grant Busch's Petition to Withdraw, and affirm the judgment of sentence.

On May 3, 2015 Rankins, while in State Correctional Institution-Forest,[2] struck a correctional officer and assaulted another inmate.  Rankins was charged with one count of aggravated assault, and two counts each of disorderly conduct, simple assault and harassment.  The Commonwealth

---

[1] **See** 18 Pa.C.S.A. §§ 2709(a), 2702(a)(3), 2701(a)(1), 5503(a).

[2] Rankins is currently serving two life sentences, along with an additional 10 years for prior murder convictions.

later moved to *nolle pros* one count each of simple assault and harassment, which the trial court granted. Following a jury trial, Rankins was found guilty of the remaining counts. Rankins' convictions were merged and he was sentenced to 36 to 72 months in prison for aggravated assault and an additional 3 months to 1 year for disorderly conduct.

Rankins filed a timely Notice of Appeal. The trial court ordered him to file a Pa.R.A.P. 1925(b) Concise Statement. Busch thereafter filed a Statement of Intent to File an **Anders** Brief in lieu of filing a concise statement.

On appeal, Rankins's counsel, Busch has filed a brief pursuant to **Anders** that raises the following issues:

I. Whether [Rankins's] Sixth Amendment due process right to be tried by an impartial jury was violated where he was not afforded a trial by [a] jury of his peers, as he was tried by an all-white jury and he is of [][A]frican [d]escent[]?

II. Whether [Rankins's] right to counsel was violated where his court-appointed counsel acts as "Amici Curiae of the Commonwealth of Pennsylvania [favorable] [] in the capacity of [t]he General Assembly of Pennsylvania is made to suffer an extreme conflict of interest in a)[] protecting the [Sixth] Amendment rights of her client [] and b)[] functioning in the interest of the [agency] of the Commonwealth to which she is by allegiance affirmed into?"

III. Whether [Rankins] was "deprived of the right of cross-examination[,] which is an essential safeguard to his right to confront the witnesses against him[,][] by unconstitutional in-court identification"?

IV. Whether the trial court "erred in failing to make curative instruction charges [] jury [] concerning testimony[s] made by the District [A]ttorney Elizabeth Ziegler ["DA Ziegler"],

Correctional [O]fficer Justin Holland ["Officer Holland"], [and] [C]orrectional [O]fficer Steve Haggerty [] against [Rankins] which were leading to the jury to the identification of … [Rankins], unconstitutionally [] admitted concerning the matter of identification which identification, on prior occasion, had been inconsistent[]"?

V. Whether the trial court erred in failing to vacate the conviction and hold a hearing to determine whether the in-court identification had an independent source?

*Anders* Brief at 4.[3]

Before addressing Rankins's issues on appeal, we must determine whether Busch has complied with the dictates of *Anders* and the requirements set forth in *Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009). Pursuant to *Anders*, when counsel believes that an appeal is frivolous and wishes to withdraw from representation, he or she must:

(1) petition the court for leave to withdraw stating that after making a conscientious examination of the record it has been determined that the appeal would be frivolous;

(2) counsel must file a brief referring to anything that might arguably support the appeal, but which does not resemble a "no merit" letter or *amicus curiae* brief; and

(3) counsel must furnish a copy of the brief to defendant and advise him of his right to retain new counsel, proceed *pro se* or raise any additional points that he deems worthy of the court's attention.

*Commonwealth v. Ferguson*, 761 A.2d 613, 616 (Pa. Super. 2000) (citation omitted).

---

[3] Busch filed a Petition to Withdraw as counsel with this Court on April 20, 2016. Rankins filed neither a *pro se* brief, nor retained alternate counsel for this appeal.

- 3 -

Additionally, the Pennsylvania Supreme Court has explained that a proper *Anders* brief must:

(1)     provide a summary of the procedural history and facts, with citations to the record;

(2)     refer to anything in the record that counsel believes arguably supports the appeal;

(3)     set forth counsel's conclusion that the appeal is frivolous; and

(4)     state counsel's reasons for concluding that the appeal is frivolous.  Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009).

We conclude that Busch has substantially complied with each of the requirements of *Anders*.  *See Commonwealth v. Wrecks*, 934 A.2d 1287, 1290 (Pa. Super. 2007) (stating that counsel must substantially comply with the requirements of *Anders*).  Busch indicates that she has made a conscientious examination of the record and determined that an appeal would be frivolous.  Further, the record contains a copy of the letter that Busch sent to Rankins, advising him of his right to proceed *pro se* or retain alternate counsel, file additional claims, and stating Busch's intention to seek permission to withdraw.  Finally, Busch's *Anders* brief comports with the requirements set forth by the Supreme Court of Pennsylvania in *Santiago*. Thus, Busch has complied with the procedural requirements for withdrawing from representation.  We next examine the record to make an independent determination of whether Rankins's appeal is, in fact, wholly frivolous.

In his first claim, Rankins argues that his Sixth Amendment due process rights were violated because he was not afforded a trial by an impartial jury. *Anders* Brief at 8. Rankins argues that an all-white jury is not impartial because he is of "African descent." *Id.*

When reviewing a claim of racial discrimination in jury selection,

> [a] defendant may establish a *prima facie* case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. To establish such a case, the defendant first must show that he is a member of a cognizable racial group, [] and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

*Batson v. Kentucky*, 476 U.S. 79, 96 (1986) (citations omitted); *see also Commonwealth v. Sanchez*, 36 A.3d 24, 44 (Pa. 2011).

To prove a *Batson* violation, the moving party must provide a full record of the alleged violation. *Commonwealth v. Uderra*, 862 A.2d 74, 84 (Pa. 2004). Specifically, the moving party must identify the race of all the venirepersons removed by the prosecution, the race of the jurors who served, and the race of the jurors acceptable to the Commonwealth who were stricken by the defense. *Commonwealth v. Washington*, 927 A.2d 586, 609 (Pa. 2007).

Initially, Rankins's **Batson** claim is waived, as he did not challenge jury selection at trial. **See Commonwealth v. Daniels**, 963 A.2d 409 (Pa. 2009) (stating that if a **Batson** objection is not raised during trial, then the claim is waived). Moreover, even if Rankins had preserved this issue for our review, he has failed to provide a full and complete **Batson** record. **See Uderra**, 862 A.2d at 84. Specifically, Rankins failed to identify the races of the venirepersons who were removed by the Commonwealth, and only references the racial composition of the individuals who actually served on the jury. **See Washington**, 927 A.2d at 609. Thus, even if the claim had been preserved, Rankins failed to prove racial discrimination in the jury selection process. Accordingly, Rankins's first claim is without merit.

In his second claim, Rankins argues that his Sixth Amendment right to counsel was violated because his court-appointed counsel, a member of the Forest County Public Defender's Office, was conflicted by "virtue of the fact that she is required to protect her client's rights while at the same time function in the interest of the Agency of the Commonwealth." **Anders** Brief at 9.

We apply the following standard of review when examining a conflict of interest claim:

> [t]he attorney's duty of loyalty is the obligation of counsel to avoid actual conflicts of interest that would adversely affect his ability to perform on behalf of his client. To establish a breach of that duty, the client must show the existence of an actual conflict of interest that adversely affected the outcome of the case. An actual conflict of interest is evidenced whenever during

the course of representation, the interests of appellant and the interests of another client towards whom counsel bears obligations diverge with respect to a material factual or legal issue or to a court of action.

*Commonwealth v. Tedford*, 960 A.2d 1, 54 (Pa. 2008) (citations omitted) (quotation marks omitted); *see also Commonwealth v. Sepulveda*, 55 A.3d 1108, 1147 (Pa. 2012) (holding that an appellant cannot prevail on a preserved conflict of interest claim absent a showing of actual prejudice).

Here, Rankins failed to raise this argument in trial court, and we could therefore deem it waived. *See* Pa.R.A.P. 302(a) (providing that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal"). Nevertheless, Rankins fails to demonstrate that defense counsel's employment with the Forest County Public Defender's Office constituted an actual conflict. Indeed, under the Public Defender Act, "statutory responsibility to provide legal counsel to criminal defendants who lack sufficient funds to obtain private counsel rests with the public defender's office." *Commonwealth v. Padilla*, 80 A.3d 1238, 1249 (Pa. 2013). Thus, Rankins failed to demonstrate that his counsel's employment with the Public Defender's Office was a conflict of interest that adversely affected the outcome of his trial. *See Tedford*, 960 A.2d at 54; *see also Commonwealth v. Thomas*, 783 A.2d 328, 337 (Pa. Super. 2001) (holding that the "mere possibility of a conflict of interest" is insufficient to challenge a criminal conviction).

Rankins's final three arguments relate to the in-court identification, made by officers working the day of the assault. Rankins argues that the identification testimony presented by Officer Holland and Officer Haggerty was not proper. *Id.* at 10. Rankins asserts that he did not cross-examine these witnesses. *Id.* Rankins additionally argues that an independent basis must be found to exist for an in-court identification to be admissible and, absent a hearing to determine whether an independent basis existed, the testimony of these Commonwealth's witnesses should have been suppressed. *Id.* at 10, 11.[4]

> In reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable. While the suggestiveness of the identification procedure is one relevant factor in determining the reliability of an identification, suggestiveness alone will not forbid the use of an identification, if the reliability of a subsequent identification can be sustained. Suggestiveness arises when the police employ an identification procedure that emphasizes or singles-out a suspect.

*Commonwealth v. Davis*, 17 A.3d 390, 394 (Pa. Super. 2011) (citations and quotations omitted); *see also Commonwealth v. Moye*, 836 A.2d 973, 976 (Pa. Super. 2003) (stating that the opportunity of the witness to view the perpetrator at the crime scene, the witness's degree of attention, the accuracy of the description, the level of certainty of the identification,

---

[4] Rankins also asserts that the DA Ziegler provided improper identification testimony. *See Anders* Brief at 9. However, aside from this bold claim, Rankins has not demonstrated that the DA provided such testimony. Thus, the claim is without merit.

and the time between the crime and confrontation may be considered in determining the propriety of identification evidence).

Here, Correctional Officer Troy Beightol ("Officer Beightol"), the victim of the assault, testified that one of his last memories, on the day of the assault, is releasing the prisoners from their cells for dinner. N.T., 12/16/15, at 40. Officer Beightol stated that his next memory was waking up in the hospital the following morning to find that he was in a neck brace, suffered a concussion and required physical therapy. *Id.* at 41.

On the day of the incident, Officer Holland was located in the control bubble, while Officer Beightol worked at the desk on the ground level. *Id.* at 48. Officer Holland stated that officers working in the control bubble have a better view of the ground area, than those actually working on it. *Id.* at 52. At dinnertime, Officer Holland observed an inmate strike Officer Beightol in the face with a closed fist. *Id.* at 54. Officer Holland subsequently identified Rankins by matching the film image of the attacker with Rankins's picture, which was located on a board that contained headshots of all the inmates housed in that area. *Id.* at 56, 57.

Officer Haggerty aided Officer Holland in the identification process, as he was working in the security department that day. *Id.* at 67. While monitoring surveillance, Officer Haggerty viewed Officer Beightol being attacked. *Id.* at 70, 71. Officer Haggerty later aided in the identification of

Rankins, by using the same process of watching the film and matching the face, on the film, to one located on the prisoner photo board. ***Id.*** at 72.

A review of the record indicates that the officers' identification of Rankins was free of suggestiveness and reliable. ***See Davis***, 17 A.3d at 394 (holding that identification of a suspect by using a photo array was reliable); ***see also Commonwealth v. Brown***, 512 A.2d 596, 598 (Pa. 1986) (stating that "there is no *per se* rule against use of 'mugshots' as a method of identification. The use of any photograph during an identification procedure is analyzed under facts and circumstances of each particular use.") (citation omitted). Officers Holland and Haggerty both testified with certainty that Rankins had been the inmate that punched Officer Beightol, and both made their identification within a short span of time. Thus, an independent basis for the identification was unnecessary. ***See Commonwealth v. Fulmore***, 25 A.3d 340, 349 (Pa. Super. 2011) (concluding that it did not need to address appellant's argument that witness did not have an independent basis for identification testimony where the identification was not tainted). Further, contrary to Rankins's argument, he was given the opportunity to cross-examine the witnesses. ***See*** N.T., 12/16/15, at 60, 78. Accordingly, Rankins's final claim is without merit.

Finally, our independent review discloses no other non-frivolous issues that Rankins could raise on appeal. We therefore grant Busch's Petition to Withdraw, and affirm the judgement of sentence.

Petition to Withdraw granted; judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/4/2016